THE STATE, EX REL. BATTIN ET AL., APPELLANTS, *v.*
BUSH ET AL., APPELLEES.

[Cite as State, ex rel. Battin, *v.* Bush (1988), 40 Ohio St. 3d 236.]

(No. 87-1903—Submitted October 26, 1988—Decided December 30, 1988.)

*Richards, Ambrosy & Frederika* and *Charles L. Richards,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Andrew I. Sutter,* for appellee Attorney General.

*Dennis Watkins,* prosecuting attorney, for appellees Board of County Commissioners, Anthony Latell, Arthur Magee and County Auditor Edward Bush.

*Comstock, Springer & Wilson* and *Thomas J. Wilson,* for appellee Trumbull County Democratic Party Central Committee.

*Thomas C. B. Letson,* for appellee William J. Timmins, Chairman, Trumbull County Democratic Party Central Committee.

HOLMES, J. The court of appeals found by its opinion that the within action was one which had as its ultimate goal the litigation of one's right to hold a public office. It reasoned, therefore, that the action sounded in quo warranto, over which actions trial-level courts are without jurisdiction. Because we find that the within action was not one to try title to a public office, and for the reasons set forth hereinafter, we reverse the judgment of the court of appeals.

## I

Initially, we shall consider the jurisdiction of the trial court over the subject matter of the within action, and more particularly, whether the appropriate action should have been one in quo warranto or for declaratory judgment. In considering an action for a writ of quo warranto, we note that the authority to hear such an action is granted in Sections 2 and 3, Article IV of the Ohio Constitution.[4] Jurisdiction is statutorily established under R.C. 2733.03[5] as exclusively vested in the courts of appeals and the Supreme Court. See, *e.g., State, ex rel. Lindley,* v. *The Maccabees* (1924), 109 Ohio St. 454, 2 Ohio Law Abs. 181, 142 N.E. 888. As pointed out by the court of appeals, the courts of common pleas are without jurisdiction over actions in quo warranto. *State, ex rel. Maxwell,* v. *Schneider* (1921), 103 Ohio St. 492, 134 N.E. 443.

The writ itself is a high prerogative writ and is granted, as an extraordinary remedy, where the legal right to hold an office is successfully challenged. *State, ex rel. St. Sava Serbian Orthodox Church,* v. *Riley* (1973), 36 Ohio St. 2d 171, 173, 65 O.O. 2d 395, 396, 305 N.E. 2d 808, 810; *State, ex rel. Cain,* v. *Kay* (1974), 38 Ohio St. 2d 15, 16-17, 67 O.O. 2d 33, 34, 309 N.E. 2d 860, 862. The actual remedy afforded is that of ouster from the public office. R.C. 2733.14.[6] Furthermore, quo warranto is the exclusive remedy by which one's right to hold a public office may

---

[4] Section 2, Article IV of the Ohio Constitution states, in pertinent part, as follows:

"(B)(1) The supreme court shall have original jurisdiction in the following:

"(a) Quo warranto[.]"

Section 3(B)(1)(a) of Article IV sets forth this same jurisdiction for the courts of appeals.

[5] See fn. 3, *supra.*

[6] R.C. 2733.14 states:

"When a defendant in an action in quo warranto is found guilty of usurping, intruding into, or unlawfully holding or exer-

be litigated. *State, ex rel. Hogan,* v. *Hunt* (1911), 84 Ohio St. 143, 95 N.E. 666, paragraph one of the syllabus. To obtain such a writ, one must demonstrate that he "is entitled to the [public] office and that the office is unlawfully held by the respondent in the action." *State, ex rel. Cain, supra,* at 17, 67 O.O. 2d at 34, 309 N.E. 2d at 862.

A review of R.C. 305.03 demonstrates that an office may be deemed to have been vacated as a matter of law without the need to resort to a proceeding in quo warranto. R.C. 305.03 (A), as amended, provides that: "Whenever any county officer fails to perform the duties of his office for ninety consecutive days, * * * his office shall be deemed vacant." The inquiry established by this statute is not whether one has the right to a particular office but whether, upon certain facts, he has abandoned the office. The focus is upon the office, and whether it is being occupied, and not upon any one person who may be entitled to hold such office. Furthermore, the statute deems the office to be vacant automatically, upon the occurrence of the statutorily determined events. Thus, while one may have been lawfully elected to an office, vested with the authority of the office and fully entitled to occupy it for a set time, nevertheless, an official may abandon his office. In such event, pursuant to the provisions of R.C. 305.03, an action in quo warranto would be unnecessary.

This view is buttressed by our opinion in *State, ex rel. Trago,* v. *Evans* (1957), 166 Ohio St. 269, 2 O.O. 2d 109, 141 N.E. 2d 665. In that case, a vacancy was declared pursuant to then effective R.C. 305.03 because the elected sheriff, who was incarcerated in another county, had been absent from the county for ninety consecutive days.

The county commissioners, pursuant to the above statute, declared the office vacant and appointed a new sheriff to fill the vacancy. Upon his release from jail, the relator filed an action for a writ of quo warranto to oust such appointed person from the office of sheriff. We upheld the denial of the writ, finding that the vacancy had been created by operation of law, leaving a mere ministerial duty to appoint someone to fill the office. In so holding, we determined that the occurrence of a vacancy in a public office under R.C. 305.03 has no relation to an action for the removal of an office holder pursuant to a writ of quo warranto. There being authority in the trial court to determine, by declaratory judgment, those matters presented below, including whether a vacancy in the office had occurred, we accordingly reverse the decision of the court of appeals.

## II

We now consider whether the trial court had jurisdiction over the person of appellant. Appellees assert, as they did in the trial court, that the guardian *ad litem* had no standing to bring an action in the name of the elected office holder. The trial court agreed with this view, finding that the office and emoluments thereof were personal to the now incompetent ward. No doubt the court was troubled by the anomaly of one bringing various causes of action to perpetuate the term of office for another who is admittedly unable to bring the action himself, or even appear in court, because of incapacity. Nevertheless, R.C. 2111.14 provides that:

"In addition to his other duties, every guardian appointed to take care of the estate of a ward shall have the following duties:

"* * *

cising an office, franchise, or privilege, judgment shall be rendered that he be ousted and excluded therefrom, and that the relator shall recover his costs."

"(E) To bring suit for his ward when such suit is for the best interests of such ward."

Karen Battin has been appointed guardian *ad litem* for Thomas Battin, her husband. As such, she has standing in her representative capacity to assert by legal action whatever interests her ward may possess, when it is for the best interests of the ward. Obviously, the goal of the within action is to obtain a right to wages and benefits assertedly owed to the ward by the county. This being for the best interest of her husband, she had standing to maintain the action below.

## III

Appellant challenges the determination of the trial court that newly amended R.C. 305.03 may be constitutionally applied to events which occurred prior to its effective date. Appellant further contends that to do so "is violative of Sec. 28, Article II of the Ohio Constitution which prohibits the enactment of retroactive laws." This constitutional provision states that: "The general assembly shall have no power to pass retroactive laws * * *." However, before we may embark upon an analysis of whether the General Assembly was permitted under the state Constitution to amend retroactively the statute at issue, and the attendant inquiry of whether such amendment is substantive or merely remedial legislation, it must first be determined whether the legislature intended the law to be retroactive. As stated in *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 106, 522 N.E. 2d 489, 495: "The issue of whether a statute may *constitutionally* be applied retrospectively does not arise unless there has been a prior determination that the General Assembly has specified that the statute so apply. Upon its face, R.C. 1.48 establishes an analytical threshold which must be crossed prior to inquiry under Section 28, Article II." (Emphasis *sic.*) R.C. 1.48 states: "A statute is presumed to be prospective in its operation unless expressly made retrospective," which is a rule of statutory construction.

As to the statute at issue, R.C. 305.03, as amended, states in pertinent part:

"(A) Whenever any county officer fails to perform the duties of his office for ninety consecutive days, except in case of sickness or injury as provided in divisions (B) and (C) of this section, his office shall be deemed vacant.

"(B) Whenever any county officer is absent because of sickness or injury, he shall cause to be filed with the board of county commissioners a physician's certificate of his sickness or injury. If such certificate is not filed with the board within ten days after the expiration of ninety consecutive days of absence, his office shall be deemed vacant."

Clearly, this statute contains no express provision that it be applied retrospectively. Also, its terms are phrased in the present tense and would seem most naturally to look forward in time. Accordingly, we conclude that there was no intent on the part of the General Assembly to apply this statute other than prospectively.

At this point, the additional question presents itself as to whether the trial court in fact gave retroactive application to the statute by its declaration that the office was vacant as of April 15, 1986. Since this was the effective date of the amendment to the statute, it would appear that the trial court's determination of vacancy in the office was calculated by considering days of absence from the performance of duties which had elapsed prior to the statute's effective date as part of the

requisite ninety consecutive days of absence under the new statute. Of course, the prior version of R.C. 305.03 also allowed for a calculation of a ninety-day period of vacancy as a basis for declaring a vacancy in a county office. However, a review of its terms demonstrates that former R.C. 305.03 defined "absence" as mere physical "absen[ce] from the county." It is admitted that appellant was never absent in such a way.

The amended version, on the other hand, established a definition of "absence" as "fail[ure] to perform the duties of his office." This was an entirely new standard for calculating the requisite ninety consecutive days of absence. More significantly, there was no basis under former R.C. 305.03 for calculating days of absence based upon a failure to perform official duties. Thus, the trial court's action is shown to be a retroactive application of R.C. 305.03 to events occurring before its effective date. See, *e.g., Cassaro* v. *Cassaro* (1976), 50 Ohio App. 2d 368, 372-373, 4 O.O. 3d 320, 322, 363 N.E. 2d 753, 757, where application of the newly enacted standard to time elapsed prior to the effective date of the statute was determined to be a retroactive application of the statute. In the case here, as previously determined, the General Assembly did not intend to apply the new standard retrospectively. Accordingly, the earliest possible date upon which days of absence, defined as absence from the performance of official duties, may be calculated is the date upon which such definition became effective as law.

The trial court below and appellee Attorney General assert that the time which elapsed prior to the effective date of the statute may be counted in calculating the ninety consecutive days of absence under the new standard,

and that such application does not constitute a retroactive application of the amended statute. Great reliance is placed upon *State, ex rel. Bouse,* v. *Cickelli* (1956), 165 Ohio St. 191, 59 O.O. 261, 134 N.E. 2d 834, which is quoted for the proposition that "[legislation] is not retroactive simply because the test involves a time factor extending prior to the effective date of the amendment." *Id.* at 192, 59 O.O. at 262, 134 N.E. 2d at 835. In their view, there is no infirmity so long as the test is only applied to cases which are filed on or after the effective date of the statute, such as appellant's.

A closer examination of the *Cickelli* decision reveals that it cannot apply under facts such as those now before us. In that case, the statute at issue expressly required a consideration of how the relator voted in elections held before the effective date of the statute. As such, the statute was clearly intended to have a retroactive application by the General Assembly, and the primary issue in that case was whether such application was unconstitutional. The case here is distinguishable in that the statute at issue has, by its terms, prospective effect only. Its standard was not intended to apply to events occurring prior to its effective date.

We turn now to the calculation of that time when the office of county commissioner became vacant. It should first be pointed out that newly amended R.C. 305.03 is, by its terms, self-executing. Upon the happening of the enumerated events, the office is then vacant. As to the enumerated terms, subsection (A) set forth above renders the office vacant when the office holder is absent from the performance of his official duties for ninety consecutive days, except when the absence is caused by sickness or injury. Subsection (B) states that if the

absence from the performance of duties was caused by sickness or injury, the office holder has ten days after the ninety consecutive days to file a physician's certificate to that effect. If he does so, then subsection (C) gives him an additional thirty days "commencing immediately after" the ten-day period before "his office shall be deemed vacant."

In the present case, a physician's certificate was filed on September 5, 1985. It attested that "* * * Thomas Reed Battin has been absent from his office and duties as county commissioner due to injuries sustained in an automobile accident." Although this certificate fully qualified under the former version of the statute, it may not be utilized for purposes of the amended statute.

The calculation of time to determine the vacancy at issue begins upon the effective date of the amended R.C. 305.03, which is April 15, 1986. As of July 14, 1986, appellant had ten days in which to file a physician's certificate which would explain his absence from the performance of his official duties for the immediately preceding ninety days. This he failed to do, and, accordingly, his office was deemed vacant as of July 14, 1986.

As a final matter, appellant also asserted that any application of the amended statute to divest one who was elected to his office prior to the amendment of the statute is violative of that elected official's constitutional rights to due process. Appellant's precise argument was presented in *State, ex rel. Trago, supra,* at 273-275, 2 O.O. 2d at 111-112, 141 N.E. 2d at 669, and rejected for the sound reason that there exists no proprietary or individual right in a public office. See, *e.g., State, ex rel. Atty. Gen.,* v. *Hawkins* (1886), 44 Ohio St. 98, 109, 5 N.E. 228, 233; *Mason* v. *State, ex rel. McCoy* (1898), 58 Ohio St. 30, 55, 50 N.E. 6, 10.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings not inconsistent herewith.

*Judgment reversed
and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.